**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DION MILLER,<br><br>               Plaintiffs,<br><br>v.<br><br>SEAN MEANS, MARTIN D'ANGELO, DET. CARMINE DISBROW, JERSEY CITY, MIKE GELCIAN (SUPERVISOR), CAPTAIN VINCENT DOHERTY (SUPERVISOR), SGT. CHARLIE RUSSO, HUDSON COUNTY,<br><br>               Defendants. | CIVIL ACTION NO.<br>2:25-cv-01009 (CCC)(JRA) |

---

BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) ON BEHALF OF DEFENDANTS CITY OF JERSEY CITY AND POLICE OFFICERS SEAN MEANS, MARTIN D'ANGELO AND CARMINE DISBROW

---

**BRITTANY M. MURRAY**
**ACTING CORPORATION COUNSEL**
Jersey City Law Department
City Hall-280 Grove Street
Jersey City, NJ 07302
Telephone (201) 547-4810
padelman@jcnj.org
Attorneys for Defendants
The City of Jersey City
and Police Officers Sean
Means, Martin D'Angelo and
Carmine Disbrow

On the Brief:
Philip S. Adelman, Esq.
Assistant Corporation Counsels

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF CONTENTS.............................................. i

TABLE OF AUTHORITIES......................................... iii

PRELIMINARY STATEMENT.......................................... 1

THE LEGAL STANDARD............................................. 3

    A. Failure to State a Claim Under Rule 12(b)(6) ........... 3

    B. Claims Under 42 U.S.C. 1983 and N.J.S.A. 10:6-1 ....... 4

LEGAL ARGUMENT................................................. 4

    <u>POINT I</u>

    PLAINTIFF'S CLAIMS AGAINST THE CITY DEFENDANTS SHOULD
    BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLED
    AND AMOUNT TO IMPROPER GROUP PLEADINGS PROHIBITED
    UNDER FED. R. CIV. P. 8..................................... 4

    <u>POINT II</u>

    PLAINTIFF'S CIVIL CONSPIRACY CLAIMS SHOULD BE
    DISMISSED.................................................... 6

    <u>POINT III</u>

    PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH
    DISABILITIES ACT AND REHABILITATION ACT SHOULD BE
    DISMISSED.................................................... 8

    <u>POINT IV</u>

    PLAINTIFF'S MONELL CLAIMS FOR UNLAWFUL POLICIES AND
    CUSTOMS SHOULD BE DISMISSED............................... 12

        A. Claims for Unlawful Policies or Customs.......... 12

        B. Plaintiff's Claims for Unlawful Policies
           and Customs Should be Dismissed.................. 13

POINT V

PLAINTIFF'S CLAIMS FOR FAILURE TO TRAIN AND SUPERVISE
SHOULD BE DISMISSED..................................... 14

    A. Claim for Failure to Train and Supervise.......... 14

    B. Plaintiff's Claims for Failure to Train
       and Supervise Should be Dismissed................. 16

POINT VI

PLAINTIFF'S CLAIMS FOR FAILURE TO INTERVENE SHOULD BE
DISMISSED............................................... 18

POINT VII

ALL CLAIMS AGAINST JERSEY CITY POLICE OFFICERS MEANS,
D'ANGELO AND DISBROW SHOULD BE DISMISSED BECAUSE THEY ARE
ENTITLED TO QUALIFIED IMMUNITY.......................... 20

    A. Qualified Immunity................................ 20

    B. The Complaint Should be Dismissed as to
       all of the Jersey City Officers Because
       They are Entitled to Qualified Immunity........... 23

POINT VIII

PLAINTIFF'S CLAIMS UNDER THE DOCTRINE OF RESPONDEAT
SUPERIOR SHOULD BE DISMISSED............................ 24

POINT IX

PLAINTIFF'S CLAIMS FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS SHOULD BE DISMISSED.................. 25

POINT X

PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE
DISMISSED............................................... 26

CONCLUSION.............................................. 27

**TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE**

Al-Ayoubi v. City of Hackensack, 2011 U.S. Dist.
LEXIS 148626 (D.N.J. December 28, 2011)..........................7

Ashcroft v. al-Kidd,
563 U.S. 731, 742, 131 S. Ct. 2074 (2011).....................20

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...................1, 3, 13

Bowers v. NCAA, 475 F.3d 524 (3d Cir. 2007).....................9

Brown v. Muhlenberg Township,
269 F.3d 205, 216 (3d Cir. 2001) ..........................15, 16

Canico v. Hurtado, 144 N.J. 361 (1996).........................26

Canton v. Harris, 489 U.S. 378 (1989)......................12, 16

Carter v. City of Phila.,
181 F.3d 339 (3d Cir. 1999) ...................................15

Catlett v. N.J. State Police,
2013 U.S. Dist. LEXIS 71237 (D.N.J. 2013)...................3, 12

CG v. Pennsylvania Dep't of Educ,
734 F.3d 229 (3d Cir. 2013)....................................9

Chapman v. New Jersey, 2009 U.S. Dist.
LEXIS 75720 (D.N.J. August 25, 2009)...........................4

City & Cnty. of San Francisco v. Sheehan,
135 S. Ct. 1765 (2015).........................................20

City of Escondido v. Emmons, 139 S. Ct. 500 (2019).............22

City of Newport v. Fact Concepts, Inc.,
453 U.S. 247 (1981)............................................26

City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)..........12

Connick v. Thompson, 563 U.S. 51 (2011)...................12, 15

Domino v. Cty. of Essex, 2021 U.S. Dist.
LEXIS 26261 (D.N.J. February 11, 2021..........................12

Downey v. The Coalition Against Rape and Abuse, Inc.,
143 F. Supp. 2d 423 (D.N.J. 2001)...............................4

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009)....................................3

Garcia v. City of Paterson,
2012 U.S. Dist. LEXIS 132515
(D.N.J. September 12, 2012)...................................14

Green v. City of Paterson,
971 F. Supp. 891 (D.N.J. 1997)..............................6, 7

Gregory v. Chehi, 843 F.2d 111 (3d Cir. 1988)..................27

Groman v. Twp. of Manalapan, 47 F.3d 628 (3d Cir. 1995)....12, 13

Haberle v. Troxell, 885 F.3d 171 (3d Cir. 2018)................8

Harlow v. Fitzgerald, 457 U.S. 800 (1982).....................20

Hayward v. Salem City Bd. of Educ.,
2016 U.S. Dist. LEXIS 122998
(D.N.J. September 12, 2016)...................................26

Hernandez v. Mesa, 582 U.S. 548 (2017)........................22

Ingram v. Twp. of Deptford,
911 F. Supp. 2d 289 (D.N.J. 2012).............................24

Ivan v. County of Middlesex,
595 F. Supp. 2d 425 (D.N.J. 2009).............................7

James v Superior Court of N.J.,
2023 U.S. Dist. LEXIS 125601 (D.N.J. July 20, 2023)............8

Japhet v. Francis E. Parker Mem'l Home, Inc., 2014 U.S. Dist.
LEXIS 105134 (D.N.J. July 31, 2014)...........................5

Jones v. City of Jersey City,
45 Fed. Appx. 196 (3d Cir. 2002)..............................22

Kisela v. Hughes, 138 S. Ct. 1148 (2018)......................22

Lapella v. City of Atl. City,
2012 U.S. Dist. LEXIS 100327 (D.N.J. 2012)...................13

Lozano v. New Jersey,
2020 U.S. Dist. LEXIS 115320 (D.N.J. 2020).....................21

Mammaro v. N.J. Div. of Child Protection & Permanency,
814 F.3d 164 (3d Cir. 2016)...................................21

Mantz v. Chain, 239 F. Supp. 2d 486 (D.N.J. 2002)..............22

McTernan v. City of York, 564 F.3d 636 (3d. Cir. 2009)........12

Monell v. New York Department of
Social Services, 436 U.S. 658 (1978)......................12, 24

Monticciolo v. Robertson, 2017 U.S. Dist. LEXIS 167895
(D.N.J. Oct. 11, 2017) ......................................18

Mullenix v. Luna, 136 S. Ct. 305 (2015)...................21, 22

New Directions Treatment Servs. v. City of Reading,
490 F.3d 293 (3d Cir. 2007) ..................................9

Ogrod v. City of Philadelphia,
598 F. Supp. 3d 253 (E.D. Pa. 2022)......................19, 23

Pearson v. Callahan, 555 U.S. 223 (2009)......................20

Perez v. New Jersey,
2015 U.S. Dist. LEXIS 92504 (D.N.J. 2015)....................25

Pettit v. New Jersey,
2011 U.S. Dist. LEXIS 35452 (D.N.J. 2011).....................4

Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997) .......14

Rinehimer v. Cemcolift,
292 F.3d 375 (3d. Cir. 2002)..................................9

Santini v. Fuentes, 795 F.3d 410 (3d Cir. 2015)...............21

Saucier v. Katz, 533 U.S. 194 (2001)......................21,22

Shearin v. E.F. Hutton Group, Inc.,
885 F.2d 1162 (3d Cir. 1989)..................................7

Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) ..............18

Smith v. Wade, 461 U.S. 30 (1983).............................27

Taylor v. Union Cnty. Corr. Facility,
2016 U.S. Dist. LEXIS 10974 (D.N.J. January 29, 2016)..........24

Thomas v. Cumberland County,
749 F.3d 217 (3d. Cir. 2014)...................................15

Thorpe v. City of Philadelphia,
2020 U.S. Dist. LEXIS 158682 (E.D. Pa. Sept. 1, 2020)......19, 23

Weber v. Don Longo, Inc.,
2018 U.S. Dist. LEXIS 34313 *44 (D.N.J. 2018) ................25

Whichard v. Willingboro Twp.,
2015 U.S. Dist. LEXIS 112961(D.N.J. August 26, 2015)..........27

Wiley v. City of Newark,
2017 U.S. Dist. LEXIS 171674 (D.N.J. 2017)....................21

Williams v. Healy,
2012 U.S. Dist. LEXIS 92896 (D.N.J. July 5, 2012)..........18, 19

Zuniga v. Amer. Home Mortgage,
2016 U.S. Dist. LEXIS 155256 (D.N.J. November 8, 2016).......4, 5

**FEDERAL RULES**

Fed. R. Civ. P. 8........................................2, 4

Fed. R. Civ. P. 12....................................1, 2, 3

**FEDERAL STATUTES**

42 U.S.C. §1983...................4, 6, 7, 12, 19, 24, 25, 26, 27

**NEW JERSEY STATUTES**

N.J.S.A. 10:6-1...............................................4

N.J.S.A. 59:3-3..............................................26

**<u>PRELIMINARY STATEMENT</u>**

This brief is respectfully submitted in support of the motion to dismiss the Complaint (ECF no. 1) for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on behalf of defendants the City of Jersey City (the "City") and Police Officers Sean Means, Martin D'Angelo and Carmine Disbrow (collectively the "City Defendants").

Plaintiff alleged the City Defendants coerced him to make a false confession which resulted in his wrongful conviction and imprisonment for approximately 20 years. Recently, Plaintiff's conviction was vacated. He has asserted numerous civil rights violations against the City Defendants due to his wrongful conviction.

For the reasons set forth herein, the Complaint lacks the requisite factual underpinnings necessary to assert actionable claims required by <u>Ashcroft v. Iqbal</u>. For example, Plaintiff failed to identify specific unlawful policies and proffer facts showing deficits in the officers' training that directly violated his rights. Plaintiff cannot satisfy the elements under the Rehabilitation and Americans with Disabilities Acts. Moreover, Plaintiff's conclusory assertions fail to show that his confession was coerced or that his rights were violated.

Of significant importance, Officer Carmine Disbrow ("Disbrow") was only accused of interviewing a fact witness and nothing states he communicated with the Plaintiff. Contrary to

Fed. R. Civ. P. 8, Plaintiff engaged in group pleading and repeatedly stated that the acts of all defendants in each Count violated Plaintiff's rights. However, Plaintiff does not specify the particular acts of misconduct committed by each of the City Defendants. Finally, the Officers Disbrow, Means and D'Angelo are entitled to qualified immunity. Accordingly, the claims against the City Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## THE LEGAL STANDARD

### A. Failure to State a Claim Under Rule 12(b)(6).

Fed. R. Civ. P. 12(b)(6) permits Courts to dismiss actions for failure to state a claim. Courts must "construe the Complaint in the light most favorable to the plaintiff," and determine whether the plaintiff is entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "To determine if a Complaint meets the pleading standard, the Court must strip away conclusory statements and look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Catlett v. N.J. State Police, 2013 U.S. Dist. LEXIS 71237 *7 (D.N.J. 2013).

A pleading requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Here, when accepting Plaintiff's allegations to be true, the Complaint does not plead specific facts in accordance with the Iqbal standard to support the claims asserted. Rather, the Complaint contains bald, conclusory assertions thereby warranting the dismissal of Plaintiff's claims as to the City Defendants.

3

**B. Claims Under 42 U.S.C. 1983 and N.J.S.A. 10:6-1.**

To establish a claim under 42 U.S.C. 1983 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-1, et seq.)(the "NJCRA"), a plaintiff must show the defendant's conduct deprived them of their rights, privileges, or immunities secured by the Constitution or laws of the United States or New Jersey. Pettit v. New Jersey, 2011 U.S. Dist. LEXIS 35452 **11-12 (D.N.J. 2011). A plaintiff must "identify the exact contours of the underlying right … violated." Downey v. The Coalition Against Rape and Abuse, Inc., 143 F. Supp. 2d 423, 437 (D.N.J. 2001). Courts construe the NJCRA in terms that are analogous to §1983. Chapman v. New Jersey, 2009 U.S. Dist. LEXIS 75720 *7 (D.N.J. August 25, 2009). Thus, all claims under the NJCRA and Section 1983 should be assessed under the same standard and dismissed for the same reasons stated herein.

**LEGAL ARGUMENT[1]**

**POINT I**

**PLAINTIFF'S CLAIMS AGAINST THE CITY DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLED AND AMOUNT TO IMPROPER GROUP PLEADINGS PROHIBITED UNDER FED. R. CIV. P. 8**

Fed. R. Civ. P. 8(a) requires plaintiffs to "specify which defendants performed which acts." Zuniga v. Amer. Home Mortgage, 2016 U.S. Dist. LEXIS 155256 at **13-14 (D.N.J. November 8, 2016).

---

[1] All references, citations and quotes from the Plaintiff's Complaint are only for purposes of this motion and do not constitute an admission to any allegation or claim.

This obligation is not satisfied "where a Complaint provide[s] only conclusory allegations against Defendants as a group." Id. Moreover, "Rule 8 is not satisfied where a Complaint lumped all Defendants together, failing to put Defendants on notice of their own alleged wrongdoing" Id. (citations omitted.) "Group pleading" of this nature "injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when." Japhet v. Francis E. Parker Mem'l Home, Inc., 2014 U.S. Dist. LEXIS 105134, at **6-7 (D.N.J. July 31, 2014). "Such speculation is anathema to contemporary pleading standards." Id.

Here, there are no allegations asserted against Officer Disbrow that support any cause of action. Rather, Disbrow is alleged to have "responded to the scene" and interviewed a witness. Complaint at ¶¶58-60. Disbrow is not specifically mentioned anywhere else in the Complaint other than as part of the "Defendants." Likewise, as discussed herein, other than the unsupported, conclusory statements concerning unlawful policies, defendant Jersey City was not accused of specific misconduct. As such, Disbrow and the City should be dismissed because Plaintiff failed to assert a claim against them.

The only allegations against Officers Means and D'Angelo state that they unlawfully coerced Plaintiff's confession. Complaint at ¶¶84-94, 167-170. Officers Means and D'Angelo are

only specifically mentioned in Count Two of the Complaint.  They are otherwise grouped with all other defendants for all other counts of the Complaint. Except for Count Two, there are no facts in the other counts describing the conduct of Means and D'Angelo. At minimum, all counts as to D'Angelo and Means except Count Two should be dismissed because there are no specific allegations against them in any other Count.

Moreover, the allegations in Count Two constitute conclusory assertions that are not supported by facts in contrast to Iqbal. Indeed, they are accused of "feeding" the Plaintiff intimate details of the events and making threats during "unrecorded" portions of the interrogation. While the Complaint is viewed in the light favorable to the Plaintiff, specific facts must still be asserted to establish a cause of action. Plaintiff's broad conclusory assertions and grouping Jersey City, Means, Disbrow and D'Angelo with all other defendants constitutes improper group pleading. Accordingly, Plaintiff has failed to state a cause of action against the City Defendants and the claims against them should be dismissed without prejudice.

## POINT II

## PLAINTIFF'S CONSPIRACY CLAIMS SHOULD BE DISMISSED

To prove conspiracy under §1983, plaintiff must show "two or more conspirators reached an agreement to deprive [a person] of a constitutional right under color of state law." Green v. City of

Paterson, 971 F. Supp. 891, 908-909 (D.N.J. 1997). Plaintiff must establish an actual violation of a right protected under §1983 and "actions taken in concert by the defendants with the specific intent to violate the … right." Ivan v. County of Middlesex, 595 F. Supp. 2d 425, 483 (D.N.J. 2009).

A plaintiff must show, "the period [and] object of the conspiracy" together with the actions of the conspirators taken to achieve that purpose. Ivan at 483 citing Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989). There must be a meeting of the minds among the defendants and an agreement of "a single plan, the essential nature and general scope which [was] known to each person to be held responsible for its consequences." Ivan at 484. Plaintiff must give facts from which a conspiratorial agreement can be inferred. Al-Ayoubi v. City of Hackensack, 2011 U.S. Dist. LEXIS 148626 *26 (D.N.J. December 28, 2011).

Here, Count VI of the Complaint simply stated "the defendants reached an agreement amongst themselves to frame [the Plaintiff] … and acted in concert with other unknown co-conspirators" thereby causing a deprivation of Plaintiff's rights. Complaint at ¶¶195-199. Other than Plaintiff's conclusory assertions, there are no specific facts describing the conduct of the City Defendants to support this cause of action.

There is no way to decipher the conduct allegedly undertaken by the City Defendants that supports this claim. Plaintiff did not

describe any communications among the City Defendants to show a meeting of the minds to establish an agreement. There are no facts showing the existence of an agreement among them. Nothing in the Complaint alleged what was discussed or agreed to by the City Defendants. Also absent are facts identifying a specific right the City Defendants conspired to violate. The allegation merely amount to speculation.

Plaintiff simply engaged in impermissible group pleading without describing the conduct of the City Defendants to support his claim. Disbrow was not even present for Plaintiff's interrogation. Plaintiff cannot prove his claim for conspiracy. Accordingly, this claim should be dismissed.

## POINT III

**PLAINTIFF'S CLAIMS UNDER THE AMERCIANS WITH DISABILITIES ACT AND REHABILITATION ACT SHOULD BE DISMISSED**

To state a claim for discrimination under the Americans with Disabilities Acts ("ADA") or the Rehabilitation Act ("RA"), Plaintiff "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." James v Superior Court of N.J., 2023 U.S. Dist. LEXIS 125601, *9 (D.N.J. July 20, 2023) citing Haberle v. Troxell, 885 F.3d 171, 178-179 (3d Cir. 2018)

(quoting <u>Bowers v. NCAA</u>, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). Courts apply the same analysis for claims under the ADA and RA. <u>New Directions Treatment Servs. v. City of Reading</u>, 490 F.3d 293, 302 (3d Cir. 2007).

Plaintiff must show that they have "(A) a physical or mental impairment that substantially limits one or more major life activities...; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A Plaintiff must also show that the defendant knew that the Plaintiff was disabled. <u>Rinehimer v. Cemcolift</u>, 292 F.3d 375, 380-381 (3d. Cir. 2002).

Additionally, Plaintiff must demonstrate they were treated differently because of their disability. <u>CG v. Pennsylvania Dep't of Educ</u>, 734 F.3d 229, 236 (3d Cir. 2013). "Plaintiffs must show they have been deprived of a benefit or opportunity provided to non-disabled [persons] … because of their disability."

When viewing the facts in the light most favorable to the Plaintiff, the claims under the ADA and RA should be dismissed. Plaintiff was not diagnosed with a specific disability. The Complaint simply proffers vague, conclusory statements that Plaintiff was exhausted, intoxicated and had a low IQ along with intellectual deficits. Complaint at ¶¶7-11, 72-89. Plaintiff also asserts the officers knew or should have known Plaintiff had a low

IQ. Id. There are no facts to support these allegations, namely, that the City Defendants should have known Plaintiff was disabled.

Intoxication is not a disability. Other than conclusory assertions that Plaintiff was tired, nothing in the Complaint shows that Plaintiff had a low IQ or any intellectual impairment. Plaintiff failed to establish that he suffered from any specific impairment impacting his ability to perform a major life activity at the time of his interrogation. There are no facts showing that the City Defendants knew or should have known Plaintiff was disabled. Indeed, Plaintiff did not tell the City Defendants he was disabled.

Further, Plaintiff did not identify any public service, program, or activity that he was denied by the City Defendants. Nothing in the Complaint states Plaintiff requested any such accommodation. Although Plaintiff claims that he should have been accommodated with a lawyer or family member, this is a constitutional right for him to exercise – there is nothing in the Complaint stating he asked for a lawyer or that the City Defendants caused him to be deprived of this right. Complaint at ¶80.

Even assuming the Officers knew about his disability, there are no facts in the Complaint showing that the acts of the Officers were undertaken because of his disability. In other words, assuming the City Defendants failed to provide the appropriate services, there are no allegations demonstrating that the absence of such

services took place because Plaintiff was disabled. Furthermore, there are no allegations of other similarly situated non-disabled persons who received the services Plaintiff contends was not given to him.

Claims for compensation under the ADA also require proof of intentional acts to discriminate. <u>Haberle</u> at 181. "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference [by alleging] "(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge." <u>Id.</u>

Here, Plaintiff's claims under the ADA and RA for compensation fail because there are no specific facts showing the City Defendants intentionally deprived Plaintiff of any services or rights due to his disability. The Complaint is also devoid of facts of prior similar situations so as to put the City Defendants on notice. Vague general assertions are not sufficient to set forth a cause of action under the ADA or RA.

Plaintiff failed to allege facts showing the City Defendants intentionally discriminated against him because of his disability. There are no specific allegations demonstrating deliberate indifference to accommodate Plaintiff or other similarly situated disabled individuals. Thus, the Claims under the ADA and RA against the City Defendants should be dismissed.

<u>**POINT IV**</u>

**PLAINTIFF'S MONELL CLAIMS IN COUNT VII FOR UNLAWFUL POLICIES AND CUSTOMS SHOULD BE DISMISSED**

A. <u>**Claims for Unlawful Policies or Customs**</u>.

A municipality can only be held liable under §1983 if it's "policy or custom" directly caused a violation of the plaintiff's constitutional rights. <u>Monell v. New York Department of Social Services</u>, 436 U.S. 658, 694 (1978). The Complaint "must identify a custom or policy, and specify what exactly that custom or policy was" which caused the plaintiff's constitutional violation. <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d. Cir. 2009).

Plaintiffs "must prove that action pursuant to official municipal policy caused their injury." <u>Domino v. Cty. of Essex</u>, 2021 U.S. Dist. LEXIS 26261 **13-14 (D.N.J. February 11, 2021) citing <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011). The Complaint must allege there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>Canton v. Harris</u>, 489 U.S. 378, 385 (1989). A single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>. <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995) citing <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-824 (1985).

Plaintiffs are not entitled to the benefit of discovery to establish or plead a custom or policy. <u>Catlett v. N.J. State</u>

Police, 2013 U.S. Dist. LEXIS 71237 (D.N.J. 2013). Plaintiffs must "identify a custom or policy, and specify what exactly that custom or policy was" in the Complaint to satisfy the Iqbal standard. Id. The "factual allegations must give notice … as to the alleged policy and custom." Lapella v. City of Atl. City, 2012 U.S. Dist. LEXIS 100327 *15 (D.N.J. 2012).

   B. **Plaintiff's Claims for Unlawful Policies and Customs Should be Dismissed.**

   Plaintiff failed to identify and describe a specific policy, custom or practice that resulted in a constitutional violation. Unsupported conclusory statements that the City Defendants withheld exculpatory information "pursuant to the policies and practices of the Jersey City Polce" fails to satisfy the requisite Iqbal standard to establish this claim. Complaint at ¶202. Plaintiff also vaguely asserts the City Defendants did not have proper investigation practices. Id. at ¶¶141-148. Alleging that the City Defendants withheld evidence and used improper investigative practices does not constitute an unlawful policy, which violated Plaintiff's rights. There are no specific facts identifying the evidence that was withheld or descriptions of the improper investigative policy. Indeed, a single incident or event does not amount to a policy. Groman at 637.

   There are no facts that establish the existence of any unlawful policies. Plaintiff vaguely identifies the alleged

conduct of the City Defendants in this matter and incorrectly argues that such behavior constitutes unlawful policies. Complaint at ¶¶141-148, 201-205. Other than the events in the instant matter, Plaintiff neglected to assert any facts of a prior pattern of similar conduct committed by the City Defendants or other officers.

Even assuming all of allegations in the Complaint are true, the acts asserted do not demonstrate the existence of an unlawful policy or custom. The alleged conduct during the interrogation does not establish an unlawful policy. Describing the events which allegedly occurred during the interrogation does not establish the existence of an unlawful policy that violated Plaintiff's rights. As such, Plaintiff cannot show a direct causal link between a municipal policy and the alleged deprivation of Plaintiff's rights. Thus, this claim against the City should be dismissed.

### POINT V

**PLAINTIFF'S CLAIMS FOR FAILURE TO TRAIN AND SUPERVISE SHOULD BE DISMISSED**

### A. Claims for Failure to Train and Supervise.

Establishing municipal liability on a failure to train claim is extremely difficult. Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997). A plaintiff "must identify a failure to provide specific training that has a cause nexus with [the Plaintiff's] injuries." Garcia v. City of Paterson, 2012 U.S. Dist. LEXIS 132515 *13 (D.N.J. September 12, 2012). "A failure to train or supervise

… requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d. Cir. 2014)(internal citations omitted).

To establish deliberate indifference, a plaintiff must show the "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." <u>Carter v. City of Phila</u>., 181 F.3d 339, 357 (3d Cir. 1999). A plaintiff must also show the need for more training was so obvious and so likely to lead to a constitutional violation that the failure to respond amounts to deliberate indifference. <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." <u>Id.</u> citing <u>Connick</u> at 61. Further,

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident

> could have been avoided if an officer had had
> better or more training, sufficient to equip
> him to avoid the particular injury-causing
> conduct … [A]dequately trained officers
> occasionally make mistakes; the fact that they
> do says little about the training program or
> the legal basis for holding the city liable.

Canton at 391-392. The deficiency in training must have actually caused the constitutional violation. Id.

A cause of action for failure to supervise must, "(1) identify the specific supervisory practice … the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg Twp., at 216.

**B. Plaintiff's Claims for Failure to Train and Supervise Should be Dismissed.**

Here, there are no allegations in the Complaint demonstrating the existence of a training deficiency or lack of training that directly caused a constitutional violation. Plaintiff only asserts self-serving, conclusory statements that are not supported by any facts. Complaint at ¶¶139-150. In particular, Plaintiff contends the City Defendants used improper investigative practices without describing the specific conduct to support this allegation.

Absent from the Complaint are any specific types of training that was defective or not provided which caused a violation of Plaintiff's rights. Likewise, there are no facts showing any supervisory conduct or the lack thereof that deprived Plaintiff of any rights. The Complaint is devoid of specific facts showing the City Defendants failed to properly train or supervise police officers which caused a violation of his rights.

There are no facts demonstrating the City Defendants were deliberately indifferent to the rights of the Plaintiff or any other persons to infer causation on a "failure to train" theory. Also missing from the Complaint are assertions establishing a lack of specific training or that the absence of such training amounted to deliberate indifference. Stating the officers engaged in misconduct during an interrogation is simply an allegation as to one event. There are no facts of prior similar acts of any officers to permit for an inference that the Police Department failed to properly train that caused a violation of Plaintiff's rights.

Furthermore, Plaintiffs did not identify specific deficiencies with any training programs, procedures or lack of supervision that violated his rights. Thus, Plaintiff cannot demonstrate (1) the City Defendants failed to train its officers with regard to any particular procedure, (2) there was a pattern of similar unconstitutional violations, (3) deliberate indifference by the City (4) that any alleged deficiencies with

17

the manner in which Plaintiffs were treated was caused by a failure to properly train, hire or supervise police officers. Moreover, there is nothing showing a pattern of similar alleged unconstitutional behavior by the City Defendants. Consequently, the claims for failure to train and supervise should be dismissed.

<u>**POINT VI**</u>

<u>**PLAINTIFF'S CLAIMS FOR FAILURE TO INTERVENE SHOULD BE DISMISSED**</u>

To prove a claim for failure to intervene, Plaintiff must show the officer "(1) observed or had knowledge that a constitutional violation was taking place, yet failed to intervene; and (2) had a reasonable and realistic opportunity to intervene." <u>Monticciolo v. Robertson</u>, 2017 U.S. Dist. LEXIS 167895, *55 (D.N.J. Oct. 11, 2017); see, <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-651 (3d Cir. 2002). As such, a police officer must have a reason to know that a constitutional violation, such as excessive force, was being used. <u>Id.</u>  A claim for failure to intervene is generally applicable to circumstances involving excessive force

To succeed on a claim for failure to intervene, Plaintiff must overcome the hurdle of qualified immunity. <u>Williams v. Healy</u>, 2012 U.S. Dist. LEXIS 92896 *44 (D.N.J. July 5, 2012)(plaintiff failed to identify which rights were violated and did not provide facts to support the claim for failure to intervene). An officer "cannot be held liable in damages for failure to intercede unless

such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Williams</u> at *44 citing <u>Harlow</u> at 818.

In <u>Thorpe v. City of Philadelphia</u>, 2020 U.S. Dist. LEXIS 158682 (E.D. Pa. Sept. 1, 2020), the Court concluded that police officers were entitled to qualified immunity where the officers were accused of failing to intervene in another officer's fabrication and withholding of evidence in violation of §1983. <u>Id.</u> at **29-32. In other words, the Court determined that it would not have been clear to the reasonable officer to understood that failing to intervene in a circumstance where another officer fabricated and withheld evidence amounts to a violation of the Plaintiff's constitutional rights. <u>Id.</u>; see, <u>Ogrod v. City of Philadelphia</u>, 598 F. Supp. 3d 253, 272-273 (E.D. Pa. 2022).

Likewise, there is no basis to conclude that a reasonable officer would have known that the interrogation violated Plaintiff's rights. Thus, there is no basis to conclude that another officer should intervened and terminated the interrogation. Plaintiff alleges that Means and D'Angelo interrogated Plaintiff and failed to identify anyone who should have intervened. Plaintiff seems to imply in Count Five that Means and D'Angelo should have intervened or stopped themselves from engaging in the interrogation. The reasonable officer would not

have concluded that the interrogation amounted to a violation of Plaintiff's rights so as to intervene. Also, there is no evidence showing that Disbrow witnessed the interrogation. Thus, Plaintiff failed to assert a claim for failure to intervene.

### POINT VII

**ALL CLAIMS AGAINST JERSEY CITY POLICE OFFICERS MEANS, D'ANGELO AND DISBROW SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

#### A. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To defeat qualified immunity, plaintiff bears the burden to show (1) the official violated a constitutional right; and (2) the right "was clearly established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009). Plaintiffs cannot overcome qualified immunity by simply "defin[ing] clearly established law at a high level of generality." Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084 (2011). "Qualified immunity is no[t] immunity … if clearly established law can simply be defined as the right to be free from unreasonable searches and seizures." City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 135 S. Ct. 1765, 1776 (2015).

Courts must conduct a two-step analysis to determine whether qualified immunity applies. Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015). First, Courts must decide if the defendant deprived plaintiff of a constitutional right and if such right was clearly established at the time of defendant's acts. Saucier v. Katz, 533 U.S. 194, 201-202 (2001); Wiley v. City of Newark, 2017 U.S. Dist. LEXIS 171674 *7 (D.N.J. 2017).

The second prong asks if the right was so clearly established that defendant should have known he committed a constitutional violation under the circumstances. Lozano v. New Jersey, 2020 U.S. Dist. LEXIS 115320 *32 (D.N.J. 2020). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. "[T]here must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. N.J. Div. of Child Protection & Permanency, 814 F.3d 164, 169 (3d Cir. 2016).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015). Courts should not define "clearly established law" at a high level of generality. Id. Rather, a clearly established right must be defined with specificity and a Court cannot simply find

that a person has the right not to be subjected to excessive force. City of Escondido v. Emmons, 139 S. Ct. 500, 503-504 (2019); see, Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)("[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, then remit the case for a trial on the question of reasonableness.")

"Such specificity [as to the right] is especially important in the Fourth Amendment context … [because] it is sometimes difficult for an officer to determine how the relevant legal doctrine, [such as excessive force or failure to intervene], will apply to the factual situation the officer confronts." Mullenix at 308 citing Saucier at 205. Thus, the dispositive inquiry to determine if a right is clearly established is whether it would be clear to a reasonable officer that his actions were unlawful given the specific facts and circumstances such conduct was undertaken. Mullenix at 308; Hernandez v. Mesa, 582 U.S. 548 (2017).

"Officers are permitted to make reasonable mistakes about what is lawful." Jones v. City of Jersey City, 45 Fed. Appx. 196, 197 (3d Cir. 2002). Therefore, qualified immunity applies if the defendant reasonably, though perhaps mistakenly, believed his conduct was lawful in light of the clearly established law and the information known at the time of the alleged violation. Mantz v. Chain, 239 F. Supp. 2d 486, 496 (D.N.J. 2002). "[I]f the law did not put the officer on notice that his conduct would be clearly

unlawful, [dismissal] based on qualified immunity is appropriate." <u>Saucier</u> at 201.

**B. <u>The Complaint Should be Dismissed as to all of the Jersey City Officers Because They are Entitled to Qualified Immunity</u>**

Officers Means, D'Angelo and Disbrow are entitled to qualified immunity from liability in this case. As previously stated, Disbrow simply interviewed a witness. He is not specifically accused of any other misconduct or named in any of the Counts. A reasonable officer would not have concluded that interviewing a witness violated Plaintiff's rights. As such, Disbrow is entitled to qualified immunity.

In <u>Thorpe v. City of Philadelphia</u>, *supra*, the Court concluded that "it was not sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding of evidence violated [a person's] constitutional rights. <u>Id.</u> at *31. Thus, the Court granted the officers qualified immunity as to the claim for failure to intervene. <u>Id.</u>; see, <u>Ogrod</u> at 272-273.

Similarly, there are no specific facts in the Complaint showing that the reasonable officer would have known that the interrogation allegedly performed by Means and D'Angelo was unconstitutional so as to violate his due process rights (Count I) and his rights under the Fifth and Fourteenth Amendments (Count II). The contours of the right must be sufficiently clear that a

reasonable officer would understand that their conduct violates someone's rights. Simply stating the officers should have known the interrogation was unconstitutional is not a clearly established law. Generally alleging the interrogation was unconstitutional clearly lacks sufficient specificity and exemplifies the high level generality that Courts prohibit. Even if the conduct was unconstitutional, qualified immunity applies if the officers reasonably and mistakenly believed their conduct was lawful.

Plaintiff failed to assert a specific, clearly established right and only proffered, generic, high level purported rights. Given the absence of a clearly established right set forth in the Complaint, Officers Means, D'Angelo and Disbrow are entitled to qualified immunity. Accordingly, all claims against these officers should be dismissed.

## POINT VIII

**PLAINTIFF'S CLAIM UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR SHOULD BE DISMISSED**

"A municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." <u>Taylor v. Union Cnty. Corr. Facility</u>, 2016 U.S. Dist. LEXIS 10974 *2 (D.N.J. January 29, 2016); see <u>Monell</u> at 690-691 (1978)(Municipality cannot be liable under §1983 for the acts of its employees on the basis of the doctrine of respondeat).

"[B]ecause respondeat superior liability is not permitted under §1983, and because New Jersey courts interpret the [New Jersey Civil Rights Act] as analogous to §1983 … respondeat superior liability is not permitted for claims under the New Jersey Constitution and the NJCRA." Perez v. New Jersey, 2015 U.S. Dist. LEXIS 92504 *21 (D.N.J. 2015) citing Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012). Accordingly, because the City and the JCPD cannot be liable under the theory of Respondeat Superior, this claim should be dismissed with prejudice.

## POINT IX

## PLAINTIFF'S CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

To establish intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) that Defendants acted intentionally or recklessly, both in doing the act and in producing emotional distress; (2) that Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) that Defendants' actions were the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it." Weber v. Don Longo, Inc., 2018 U.S. Dist. LEXIS 34313 *44 (D.N.J. 2018). As discussed herein, the acts of the Defendants are not so outrageous to go beyond all bounds of decency thereby warranting dismissal of the claim for IIED.

"The most basic duty of a police officer is to enforce the law." Canico v. Hurtado, 144 N.J. 361, 365 (1996). "In discharging this duty, police officers may use all reasonable means to uphold the law and apprehend perpetrators." Id. Public employees (i.e. police officers) will not be held liable for their actions if they "act in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3.

The Officers acted in good faith. There is no dispute that the Officers performed their police duties to interrogate a suspect. Absent from the Complaint are facts demonstrating that the conduct of Officers Means, Disbrow or D'Angelo wase intentional or outrageous.   Disbrow's interview of suspect could not have caused distress the Plaintiff. Consequently, the City Defendants are immune from liability under N.J.S.A. 59:3-3 for Plaintiff's claim of IIED.

### POINT X

### PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Municipalities are immune from punitive damages under 42 U.S.C. 1983. City of Newport v. Fact Concepts, Inc., 453 U.S. 247, 271 (1981), see Hayward v. Salem City Bd. of Educ., 2016 U.S. Dist. LEXIS 122998 *18 (D.N.J. September 12, 2016). Moreover, "no punitive or exemplary damages shall be awarded against a public entity." N.J.S.A. 59:9-2(c). Government officials are immune from

liability for punitive damages when sued in their official capacity. Gregory v. Chehi, 843 F.2d 111, 119-120 (3d Cir. 1988).

Reckless or callous indifference toward the rights of others may support a claim for punitive damages. Whichard v. Willingboro Twp., 2015 U.S. Dist. LEXIS 112961 *34 (D.N.J. August 26, 2015) citing Smith v. Wade, 461 U.S. 30, 56 (1983). Here, there is no basis for punitive damages because there are no allegations that the City Defendants' conduct was reckless, evil-minded or a callous indifference as to Plaintiff's rights. Plaintiff only asserted bald, conclusory statements that do not support any claims. Thus, the claim for punitive damages should be dismissed.

**CONCLUSION**

For the reasons set forth herein, it is respectfully requested that the City Defendants' motion to dismiss be granted in its entirety and the claims against them be dismissed without prejudice.

Respectfully submitted,

BRITTANY M. MURRAY
ACTING CORPORATION COUNSEL

Dated: August 5, 2025          */s/ Philip S. Adelman*
Philip S. Adelman
Assistant Corporation Counsel